**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SAUL LEYVA, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 09 C 2003 |
| vs. ) | |
| ) | Judge Joan H. Lefkow |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Saul Leyva, who is currently incarcerated at the Moshannon Valley Correctional Center in Philipsburg, Pennsylvania, has filed a *pro se* petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He asserts two main grounds for relief: (1) he received ineffective assistance of counsel because his attorneys (a) failed to negotiate a plea agreement; (b) failed to advise him to plead guilty and explain general litigation strategy; and © failed to highlight his medical condition, the harsh conditions of his confinement, and the sentences of his codefendants at sentencing; and (2) his sentence is procedurally and substantively unreasonable. For the reasons stated below, Leyva's petition is denied.

**RELEVANT FACTS**

On February 16, 2007, Leyva was arrested along with two others, Jose Payan and Bogar Santana, for participating in a drug deal. On November 6, 2007, a federal grand jury issued a three-count superseding indictment against Leyva, charging him with conspiracy to possess with intent to distribute quantities of marijuana, in excess of 50 grams of methamphetamine, and in excess of 100 grams of heroin in violation of 21 U.S.C. § 846 (count I), using a telephone in

1

furtherance of a drug trafficking conspiracy in violation of 21 U.S.C. § 843(b) (count II), and possession with intent to distribute in excess of 50 grams of methamphetamine and in excess of 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) (count III).

Leyva proceeded to a trial on March 24, 2008. On March 26, 2008, he was convicted of all three counts. The jury made a special finding that the amount of heroin involved in his conspiracy was more than 100 grams, that the amount of methamphetamine was more than 50 grams, and that the amount of marijuana was less than 100 kilograms. The jury further found that with respect to count III, the amount of controlled substances involved was more than 50 grams of methamphetamine and more than 100 grams of heroin. On July 11, 2008, Leyva was sentenced to 72 months in prison.

Leyva's codefendant Payan, who accepted responsibility and pleaded guilty, received a 66-month sentence. His other codefendant, Santana, who by pleading guilty accepted responsibility and qualified for safety-valve and minor role reductions, received a 36-month sentence.

On April 1, 2009, Leyva filed this timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**DISCUSSION**

Relief under 28 U.S.C. § 2255 "is reserved for extraordinary circumstances." *United States* v. *Hays*, 397 F.3d 564, 566 (7th Cir. 2005) (citations omitted) (internal quotation marks omitted). A district court must grant a § 2255 motion to vacate, set aside, or correct a sentence when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum

2

authorized by law or is otherwise subject to collateral attack." *Id.* at 566-67 (citations omitted) (internal quotation marks omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (an evidentiary hearing is not required where a petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific.").

## I.     Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The petitioner "bears a heavy burden in establishing an ineffective assistance of counsel claim," *United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995), particularly since the *Strickland* test "is highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States* v. *Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (internal quotation marks omitted).

To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel.  *Fountain* v. *United States*, 211 F.3d 429, 434 (7th Cir. 2000) (citing *Trevino*, 60 F.3d at 338).  The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance.  *Id.*  To establish under the prejudice prong the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to

3

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

      A.      **Failure to Negotiate a Plea Agreement**

Leyva first argues that his attorneys were ineffective because, despite his willingness to accept a plea agreement, they failed to engage in plea negotiations with the government. Leyva specifically alleges that when he learned of his codefendants intentions to plead guilty, he asked his attorneys to negotiate a plea agreement on his behalf. He claims that instead of trying to negotiate a plea agreement, his attorneys advised him that they would file motions to exclude the testimony of his codefendants. *See* Leyva Aff. ¶¶ 8-9. As a result, Leyva argues, he was "obligated" to go to trial. Pet'r's Mot. at 4.

By contrast, defense counsel's affidavit indicates that Leyva was unreceptive to any plea negotiations and that he consistently maintained his innocence up until and throughout the trial. In their affidavit, his attorneys state that when they recommended to Leyva that he plead guilty, he "insisted on his innocence and told defense counsel that he was anxious to proceed to trial." *Id.* ¶ 6. They state that they "did not request that the government provide a written plea agreement because [] Leyva vehemently claimed his innocence as to the methamphetamine and heroin charges and stated his desire to proceed with trial." *Id.* ¶ 7. They did, however, *discuss* a potential plea offer with the government. They subsequently explained to Leyva that he would be subject to the same guideline range of codefendant Santana if he were to accept such an offer.

4

*Id.* ¶ 7. They state that Leyva was not receptive to the offer and that he "refused to plead guilty. He insisted on his innocence and told defense counsel that he was anxious to proceed to trial. He even expressed dissatisfaction both times when the trial was continued." *Id.* ¶ 6. Counsel further state that "[d]uring all [their] meetings with [] Leyva, he told defense counsel that he was not guilty of the charged offenses, with the exception of some marijuana distribution, and wanted to proceed with trial. [] Leyva fervently denied his involvement with methamphetamine and heroin." *Id.* ¶ 8. In its response motion, the government stated that "there was no plea offer made to [Leyva] by the government because he continuously expressed an interest in proceeding to trial." Gov't's Resp. at 4.

A defendant can prove that his attorney's performance with respect to a plea offer was deficient if he can show that his attorney "did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the legal principles, and to discuss that analysis with him." *United States* v. *Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). Where a defendant is uncooperative or unreceptive to a plea, however, counsel's failure to secure a plea bargain or to engage in plea negotiations does not amount to ineffective assistance of counsel. *Ghilarducci* v. *United States*, No. 09-C-4872, 2009 WL 1309499, at *4 (N.D. Ill. May 11, 2009) (citing *United States* v. *Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here . . . .")); *see also United States* v. *Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[T]he government is not bound to discuss, much less enter into, a plea agreement.").

Here, Leyva's attorneys state that they did not request (and the government did not offer) a plea agreement because he consistently expressed a desire to go to trial. Indeed, the

5

submissions from Leyva's attorneys, corroborated by the government, demonstrate that Leyva was very resistant to any discussions regarding a potential plea agreement. Furthermore, Leyva himself tacitly admits that he insisted upon his innocence. *See* Pet'r's Reply at 3 (arguing that his attorneys were bound by a "duty to advise [their] client with respect to plea bargaining, even when the client insists upon his innocence."). Though Leyva asserts that he asked his attorneys to negotiate a plea agreement, his inconsistent actions, notably his continued proclamation of innocence, cast doubt on the validity of this assertion. *See Ghilarducci*, 2009 WL 1309499, at *4-5 (finding petitioner's assertion that he would have pled guilty to avoid the indictment of his family members incredible in light of his attorney's statements that petitioner never expressed an interest in pleading guilty, consistently ignored his attorney's suggestions to plead guilty, and expressed confidence that he would prevail at trial). According deference to Leyva's attorneys' decision that their uncooperative client could not be persuaded to negotiate with the government, the court finds their actions with respect to plea negotiations to be reasonable. *See Strickland*, 466 U.S. at 691 ("[T]he reasonableness of . . . counsel's actions is often determined . . . by the defendant's own . . . actions.").

Moreover, even if counsel's conduct fell below commonly accepted standards, Leyva's claim would still fail because he cannot establish that he was prejudiced by counsel's failure to arrange a plea agreement. To establish prejudice under the *Strickland* test, Leyva must establish, through the use of objective evidence, a reasonable probability that he would have accepted the plea agreement. *See Toro* v. *Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991). Leyva, however, cannot meet this burden. There is no evidence, other than his own self-serving statement, which stands in direct contradiction to his actions, that he would have agreed to a plea agreement.

6

## B. Alleged Failure to Discuss Litigation Strategy with Leyva

Leyva next argues that his attorneys were ineffective because they failed to advise him to plead guilty rather than proceed to a trial. He specifically argues that counsel did not accurately describe the government's evidence against him and did not explain acceptance of responsibility, the sentencing guidelines, or the relevant mandatory minimum sentences and, as a result, did not adequately inform him of the potential consequences of going to trial. He states that "had he been correctly informed by his counsel regarding a plea offer, he would have plead[ed] guilty instead of going to trial." Pet'r's Mot. at 3. In support of these arguments, Leyva's affidavit states only that his attorneys "never explain[ed] to him that by going to trial, [he] was facing a sentence of 97-121 months imprisonment instead of 60 to 66 months as his codefendant [was facing as a result of signing a plea agreement]." Leyva Aff. ¶ 6.

By contrast, Leyva's attorneys state that "on several occasions, [they] met with [] Leyva to discuss with him pleading guilty, or alternatively, going to trial. [] Leyva was well aware of the maximum sentence, the sentencing guideline range, and the statutory minimum sentence . . . . Defense counsel also explained the application under both scenarios, i.e. if he was to plead guilty versus if he was to proceed to trial . . . . Defense counsel told him that he would receive a three level reduction for acceptance of responsibility and a timely notice to the government of his intent to plead guilty." Def. Counsel Aff. ¶ 5. They state that Leyva "refused to plead guilty. He insisted on his innocence and told defense counsel that he was anxious to proceed to trial. He even expressed dissatisfaction both times when the trial was continued." *Id.* ¶ 6.

Additionally, his attorneys state that "[o]n a number of occasions, defense counsel met with [] Leyva to review discovery including plea agreements of codefendants, statements of

7

codefendants, and key transcripts . . . . At length, defense counsel discussed with and confronted [] Leyva with evidence pointing to his guilt." Def. Counsel Aff. ¶4. They further state that they "warned [] Leyva that the two codefendants were likely to testify against him at his trial and their testimony would be very damaging to his case." *Id.*

With respect to this aspect of Leyva's claim, the parties tell two different stories. Leyva claims that his attorneys failed to communicate about basic strategic elements of the litigation, while his attorneys claim that they did communicate with Leyva, but that he refused to listen to their advice, continually insisting upon his innocence. Leyva's claims amount to unsupported, palpably incredible allegations that are undeserving of an evidentiary hearing. *See Bruce*, 256 F.3d at 597; *Ghilarducci*, 2009 WL 1309499, at *6 (where petitioner's attorney described him as unwilling to listen to strategic advice and insistent upon proceeding to trial, petitioner's allegations that his attorney failed to discuss litigation strategy constituted "unsupported blanket allegations of [counsel's] failure that this Court finds palpably incredible and therefore undeserving of an evidentiary hearing"). The court finds that Leyva's attorneys' actions were reasonable for reasons similar to those described above: a client who is unwilling to consider his attorneys' suggestions before the trial court cannot claim ineffective assistance of counsel afterward. *See Ghilarducci*, 2009 WL 1309499, at *6; *Strickland*, 466 U.S. at 691. In light of Leyva's attorneys' (and the government's) description of Leyva's resistance to cooperation, the court finds his counsel's actions to be reasonable. Even if the court were to find otherwise, Leyva's claim would still fail under the second prong of *Strickland*, as he maintained his innocence throughout the litigation. *See Richards* v. *United States*, No. 05-cr-35-tls, 20009 WL 3109757, at *4 (N.D. Ind. 2009) ("[E]ven had counsel instructed the Petitioner to plead guilty,

the Court would not have been able to accept the plea, as the Petitioner maintained his innocence.").

### C. Alleged Failure to Discuss Salient Issues at Sentencing

Leyva also argues that his attorneys were ineffective at sentencing because they failed to bring to the court's attention several § 3553(a) factors, including his serious medical condition, the poor conditions of his confinement at Kankakee prison, and the sentences given to his codefendants. These allegations are not only problematically unsupported by an affidavit, *see Kafo* v. *United States*, 467 F.3d 1064, 1068 (7th Cir. 2006) ("[T]here are salutary reasons for requiring strict observance of the affidavit requirement."), but are also unsupported by the record. Indeed, the court's review of the sentencing transcript indicates that Leyva's attorneys discussed his medical condition, *see* Sentencing Tr. 10:18-11:17, the conditions of his confinement, *see id.* 12:2-23, and the sentences of Leyva's codefendants, *see id.* at 21:22-23. Furthermore, each of these considerations is discussed in the defendant's version of the offense, which was submitted to the court by Leyva's attorneys prior to sentencing. Accordingly, the court finds Leyva's ineffective assistance claim attacking the reasonableness of counsel's conduct at sentencing to be without merit.

## II. Alleged Unreasonableness of Sentence

Leyva argues for the first time in his petition that his sentence was procedurally and substantively unreasonable. He argues that his sentence was procedurally unreasonable because the court did not have sufficient information regarding his medical condition, the poor conditions of his imprisonment at Kankakee, or the shorter sentences of his codefendants to make an informed sentencing decision. He argues that his sentence was substantively unreasonable

because it was disproportionate to the seriousness of his crimes and because it was higher than the sentences of his codefendants. A defendant who fails to raise an issue on direct appeal "may not proffer it as a ground for collateral attack unless he demonstrates (1) good cause for failing to raise the error and (2) that the alleged error was actually prejudicial." *Wright* v. *United States*, 139 F.3d 551, 552 (7th Cir. 1998); *see also Olmstead* v. *United States*, 55 F.3d 316, 319 (7th Cir. 1995) (a § 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal.").

In this case, Leyva waived his right to an appeal. On July 16, 2008, Leyva's attorneys discussed with him his right to appeal, and he accepted their recommendation to waive this right by signing a waiver after its contents were translated into Spanish for him. Def. Counsel Aff. ¶ 17. Leyva has offered no argument that his waiver was involuntary or coerced, nor has he offered an argument that he had good cause for failing to assert his claims addressing the reasonableness of his sentence on appeal. Because he is unable to establish good cause for failing to raise these claims in an appeal, they are procedurally defaulted. *See Wright*, 139 F.3d at 552.

Moreover, even if Leyva could establish good cause under *Wright*, he would be unable to establish prejudice, as his arguments are frivolous. Indeed, his sentence of 72 months was well below the guideline range of 97-121 months of imprisonment. *See United States* v. *George*, 403 F.3d 470, 473 (7th Cir. 2005) ("[I]t is hard to conceive of below-range sentences that would be unreasonably high."). Further, contrary to Leyva's assertions, the court was made aware of his medical condition, the conditions of his imprisonment, and the sentences of his codefendants before it imposed Leyva's sentence. *See* Sentencing Tr. 10:18-11:17, 12:2-23, 21:22-23. Finally, although the sentences of his codefendants were of shorter duration, the shorter

sentences were the result of his codefendants' willingness to plead guilty and accept responsibility for their crimes; they do not provide evidence of the court's prejudice against Leyva.

## **CONCLUSION AND ORDER**

For the foregoing reasons, Leyva's § 2255 petition to vacate, set aside, or correct his sentence is denied.


Dated: March 31, 2010                    Enter: _____

                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge